**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **22-CR-377-01 (ABJ)** |
| **TYREE MCCOMBS** | : | |

**DEFENDANT MCCOMBS'S**
**MOTION TO SUPPRESS EVIDENCE**
**OBTAINED AS A RESULT OF UNCONSTITUTIONAL WARRANT**

Pursuant to the Fourth Amendment to the United States Constitution, Mr. Tyree

McCombs, through undersigned counsel, respectfully moves this Honorable Court to suppress

the use of all evidence obtained from the unlawful search of three cell phones seized from him

on November 8, 2023. The warrant which authorized the search lacked probable cause, was

overbroad, and violated the Fourth Amendment's particularity requirement. A hearing is

requested on this motion.

**Factual Background**

Mr. McCombs is charged in a sixteen-count Indictment, ECF 24, with offenses arising

out of two unrelated incidents. Counts Five through Sixteen allege offenses arising out of the

alleged robbery and kidnapping of A.H. on November 7 and 8, 2022.[1] Counts One through Four

---

[1] The charges related to these allegations are Count Five, conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a); Count Six, interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a); Count Seven, using, carrying, brandishing, and discharging a firearm during and in relation to, or possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), (iii) and 18 U.S.C. § 2; Count Eight, conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c); Count Nine, kidnapping, in violation of 18 U.S.C. § 1201(a)(1); Count Ten, interstate stalking, in violation of 18 U.S.C. § 2261A; Count Eleven, interstate transportation of stolen property, in violation of 18 U.S.C. § 2314; Count Twelve, unlawful possession of a firearm and ammunition by a person convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1); Count Thirteen, assault with intent to kill while armed, in

allege offenses arising out of the alleged robbery and kidnapping of M.M. and A.C. on September 4, 2022.[2]  The evidence of Mr. McCombs's alleged involvement in the offenses was derived from the unlawful searches of the cell phones seized from him on November 8, 2023.

During the early morning hours of November 8, 2023, police responded the area of 24th and Lawrence Street, N.E. for a report of an aggravated assault. There, they found A.H., who was suffering from a gunshot wound to her foot. She reported that she had been kidnapped from the area of Robinson Jefferson Drive in Columbia, Maryland by two unknown masked men. She fled from the men and ran to the location where police found her. As she ran, one of the men shot at her, striking her foot. She was unable to describe the men and indicated that she did not think she could identify them because they were wearing masks.

Police then searched the District of Columbia Court Services and Offender Supervision Agency (CSOSA) Global Positioning System (GPS) records. According to those records, a GPS monitor assigned to Mr. McCombs was in the area where A.H. was shot near the time of the shooting. Police then showed a photo array containing Mr. McCombs's photograph to A.H. She stated that she was not sure and did not want to identify anyone from the array as the person who robbed her, but then she pointed to the photo of Mr. McCombs and said it looked like the man

---

violation of 22 D.C. Code §§ 401, 4502, 1805 (2001 ed.); Count Fourteen, aggravated assault while armed, in violation of 22 D.C. Code §§ 404.01, 4502, 1805 (2001 ed.); Count Fifteen, possession of a firearm during a crime of violence or dangerous offense (relating to Count Thirteen), in violation of 22 D.C. Code §§ 4504(b) (2001 ed.); and Count Sixteen, possession of a firearm during a crime of violence or dangerous offense (relating to Count Fourteen), in violation of 22 D.C. Code §§ 4504(b) (2001 ed.).

[2] The charges related to these allegations are Count One, conspiracy to interfere with interstate commerce by robbery, in violation of 18 U.S.C. § 1951(a); Count Two, conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c); Count Three, interstate stalking, in violation of 18 U.S.C. § 2261A; and Count Four, interstate transportation of stolen property, in violation of 18 U.S.C. § 2314.

who robbed her because the eyes were similar.[3] With no additional information connecting

Mr. McCombs to the charged offense and without a warrant, the police arrested Mr. McCombs.[4]

After arresting Mr. McCombs, police seized from him three cell phones. The police then

obtained a search warrant for these cell phones. *See* Exhibit 1. The warrant, by referring to

"Attachment A-1 (3 Cell Phones)," sought the search of:

>       A. One (1) Blue iPhone IMEI351183329255482 seized from
>          TYREE EUGENE MMCCOMBS at 1805 Bladensburg Road
>          Washington, D.C. 2002].
>
>       B. One (1) Blue iPhone IMEI 350141787790979 seized from
>          TYREE EUGENE MCCOMBS at 1805 Bladensburg Road
>          Washington, D.C. 20002].
>
>       C. One (1) Black Schok cell phone seized from TYREE EUGENE
>          MCCOMBS at 1805 Bladensburg Road Washington, D.C.
>          20002].

Although the police were investigating only the kidnapping of A.H. on November 8, 2023, and

had no specific reason to believe evidence would be found on any of the cell phones, the warrant

permitted a broad search of all the data on all three cell phones. The warrant referenced

"Attachment B" regarding the "property to be seized," but that list authorized the search for

evidence of the "criminal activity under investigation" without defining or limiting the "criminal

activity under investigation" and provided no temporal limits on the scope of the search of

material on the cell phones. Attachment B authorized the search of materials on the phone

---

[3] She did not say, "I feel like it's number 9," as alleged in the affidavit in support of the search warrant. She said that she did not want to pick anyone because she was not sure, but said "it could be" as she pointed to the photo. She also did not say, "he looks recognizable," as alleged in the affidavit, but rather when asked why she thought it could be number 9, she said, "because I could tell that his face was kinda long and the eyes. His eyes part kinda looked like that."

[4] The following day, November 9, 2023, after Mr. McCombs had been under arrest and detained for more than 24 hours, the police filed a complaint in this matter, and Magistrate Judge G. Michael Harvey issued a warrant for his arrest. The affidavit in support of that complaint, however, contained information that was obtained after police arrested Mr. McCombs.

regardless of when they were created, including materials created decades prior to the kidnapping of A.H. The list specifically authorized the search of materials indicating the possession or sale of property belonging to A.H., but again without limiting that search to data created during or after the kidnapping. The broad list included:

> a. Records and information relating to kidnapping or gun possession;
>
> b. Records and information relating to unlawful possession or acquisition of any firearms, ammunitions, switches, or firearms paraphernalia, including in furtherance of a kidnapping.
>
> c. Records and information that constitute evidence concerning persons, including but not limited to who either (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with members about matters relating to the criminal activity under investigation, including records that help reveal their identities or whereabouts.
>
> a. [sic] Records and information that constitute evidence of the state of mind of any coconspirators or collaborators, e.g., intent, absence of mistake, or evidence indicating preparation or planning, or knowledge and experience, related to the criminal activity under investigation.
>
> b. Any conversations, whether through text messages or other applications, which involves the discussion of the crime under investigation, firearms, or criminal proceeds;
>
> c. Any photographs or videos of firearms and photographs of individuals possessing firearms and/or and photographs showing the association of individuals relevant to the SUBJECT OFFENSE;
>
> d. Evidence of, or relating to, the Subject's access to, use of, and/or control over a silver sedan with red seats;
>
> e. Evidence of, or relating to, the Subject's possession of property belonging to [A.H.] including a Glock handgun, a lockbox, credit cards, identification cards, a social security card, currency and two iPhones

f. Evidence of any proceeds from the kidnapping and/or their disposition, such as any efforts to dispose of them

g. Passwords, encryption keys, and other access devices that may be necessary to access the Devices.

h. Records of or information about Internet Protocol addresses used by the Devices

i. Records of or information about the Devices' Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses, which constitutes evidence of the SUBJECT OFFENSE.

j. Evidence of who used, owned, or controlled the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, chat, instant messaging logs, photographs, and correspondence.

k. Evidence of the times the Devices were used.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage.

## **Argument**

The Fourth Amendment requires police to obtain a warrant before searching data on cell phones. *Riley v. California*, 573 U.S. 373, 386 (2014). The Fourth Amendment imposes two general requirements: "First, all searches and seizures must be reasonable. Second, a warrant may not be issued unless probable cause is properly established, and the scope of the authorized search is set out with particularity." *Kentucky v. King*, 563 U.S. 452, 459 (2011); *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched

and the persons or things to be seized." (internal quotation marks omitted)). The particularity

requirement for warrants "makes general searches under them impossible and prevents the

seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left

to the discretion of the officer executing the warrant." *Marron v. United States*, 275 U.S. 192,

196 (1927). "The uniformly applied rule is that a search conducted pursuant to a warrant that

fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional."

*Massachusetts v. Sheppard*, 468 U.S. 981, 988 n.5 (1984); *see also United States v. Griffith*, 867

F.3d 1265, (D.C. Cir. 2017) ("We will hold a warrant invalid when 'overly broad.'").

## I.   The Warrant Was Not Supported By Probable Cause to Search and Seize All Data on the Three Cell Phones.

An application for a search warrant "must establish probable cause to believe . . . that

evidence is likely to be found at the place to be searched." *Groh v. Ramirez*, 540 U.S. 551, 568

(2004). The application "must articulate *specific* items that can be seized, and a *specific* place to

be searched[.]" *Id*. (emphases added). "Wholly conclusory" statements that an affiant "has cause

to suspect and does believe" that contraband will be found at a location "will not do." *Illinois v.*

*Gates*, 462 U.S. 213, 232 (1983).

"An application for a search warrant differs" from an application for an arrest warrant "in

that it is necessary to establish that certain items are probably located at the present time in a

certain place." *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983) (emphasis added).

Thus, "to obtain a warrant to search for and seize a suspect's possessions or property, the

government must do more than show probable cause to arrest him." *Griffith*, 867 F.3d at 1271.  It

must show "probable cause to believe that the legitimate object of a search is located in a

particular place." *Id*. (quoting *Steagold v. United States*, 451 U.S. 204, 213 (1981)). "Probable

cause that a resident of the location has committed a crime is inadequate, in itself, to satisfy th[e]

6

requirement of showing that evidence probably will be found at the locations searched." *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995). Indeed, the D.C. Circuit has expressly rejected the government's invitation to "authoriz[e] a search of a person's home almost anytime there is probable cause to suspect her of a crime." *Griffith*, 867 F.3d at 1275. "Moreover, there must, of course, be a nexus between the item to be seized and criminal behavior." *Id*. at 1271 (cleaned up) (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)). The warrant application must provide a logical nexus between the particular suspect, the particular evidence sought from that suspect, and the particular place to be searched. A "let's look anywhere" approach to policing is exactly what the Fourth Amendment is supposed to prevent.

Here, the government suspected Mr. McCombs of participating in the kidnapping of A.H., but when applying for the warrant, law enforcement had no evidence that Mr. McCombs or any other suspected communicated via cell phone or used a cell phone, electronic mail, social media, or any other electronic means to communicate. In fact, the government's evidence suggested that on November 7 coconspirators traveled in two cars and stopped and spoke to each other face to face. No evidence connected the three cell phones to the crime police were investigating.

In *Riley v. California*, 573 U.S. 373, 399 (2014), the Court explained, "[i]t would be a particularly inexperienced or unimaginative law enforcement officer who could not come up with several reasons to suppose evidence of just about any crime could be found on a cell phone." *Id.* The Court recognized that "[e]ven an individual pulled over for something as basic as speeding might well have locational data dispositive of guilt on his phone. . . . The sources of potential pertinent information are virtually unlimited." *Id*. But police officers simply do not have "unbridled discretion to rummage at will among a person's private effects." *Id*. (quoting

*Arizona v. Gant*, 556 U.S. 332, 345 (2009)). Under *Riley*, something more is required; a search of Mr. McCombs's digital devices was not supported simply because officers could "come up with several reasons to suppose evidence" of the crime alleged in this case "could be found" on them. *Id*.

Here, the government had nothing more than a generalized reason to seize and search Mr. McCombs's digital devices. If the affidavit here is sufficient, then anytime police have reason to identify a person as someone who committed a crime, they would have probable cause to search all electronic devices possessed by that person because law enforcement has reason to believe that "criminals and/or conspirators and individuals use cell phones, other electronic devices, electronic mail ("e-mail"), and social media to conduct their illegal activity, to preserve and distribute photographs and videos in order to memorialize previous illegal activity, and to maintain contact with other confederates, conspirators, and criminal associates involved with the planning, targeting, and execution of their goals." Exhibit 1, Search Warrant Affidavit ¶ 37. That result is inconsistent with Supreme Court precedent and would sanction exactly the sort of general rummaging the Fourth Amendment prohibits. The Fourth Amendment does not authorize opportunistic searches of any and all digital devices merely because the person in possession of those devices is suspected of having violated a law. There must be some connection between the device and the alleged crime. Here, the warrant was supported by no such connection and therefore, lacked probable cause.

## II.     The Warrant Failed to Particularly Describe the Evidence Sought and Was Unconstitutionally Overbroad.

As this Court has explained,

> The Constitution limits searches by law enforcement to "the specific areas and things for which there is probable cause to search," and it requires that a search "be carefully tailored to its justifications" and

"not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). Accordingly, "[s]earch warrants must be specific." *United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006). "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based." *Id.*, quoting *United States v. Towne*, 997 F.2d 537, 544 (9th Cir.1993).

*United States v. Manafort*, 313 F. Supp. 3d 213, 231 (D.D.C. 2018).

The Fourth Amendment's particularity requirement is especially important where the property to be seized and searched consists of digital devices and electronically stored information. *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013); *United States v. Wey*, 256 F. Supp. 3d 355, 382–83 (S.D.N.Y. 2017). The seizure and retention of electronic devices and data "give the government possession of a vast trove of personal information about the person to whom the [property] belongs, much of which may be entirely irrelevant to the criminal investigation that led to the seizure." *United States v. Ganias*, 824 F.3d 199, 217 (2d Cir. 2016) (en banc). "As such, the potential for privacy violations occasioned by an unbridled, exploratory search of a hard drive is enormous—a threat that is compounded by the nature of digital storage." *Wey*, 256 F. Supp. 3d at 383 (cleaned up). "There are just too many secrets on people's computers, most legal, some embarrassing, and some potentially tragic in their implications, for loose liberality in allowing search warrants." *United States v. Gourde*, 440 F.3d 1065, 1077 (9th Cir. 2006) (Kleinfeld, J., dissenting). A digital search captures vast quantities of data; innocent and personal information with no relevance to the asserted claims; access points to other digital devices and data; electronically stored information of which the user is unaware; and destroyed data. *In re Appl. for Search Warrant*, 770 F. Supp. 2d 1138, 1144–46 (W.D. Wash. 2011). Therefore, "a heightened sensitivity to the particularity requirement in the context of digital

9

searches is necessary." *Wey*, 256 F. Supp. 3d at 383 (cleaned up) (quoting *Galpin*, 720 F.3d at 447).

Here, the scope of the warrant was overbroad, and the warrant failed to particularly describe the evidence sought. Although the warrant was based on the allegation that Mr. McComb participated in the kidnapping of A.H. on November 7-8, 2023, it authorized the search of the three cell phones without sufficiently narrowing the search to evidence of that offense and without setting temporal limits based on the timing of the kidnapping. The warrant allowed law enforcement to rummage through the phones for data regardless of when it was created or the possibility that it might relate to the kidnapping.

This Court should find, as the District of Columbia Court of Appeals has found:

> It is not enough for police to show there is probable cause to arrest the owner or user of the cell phone, or even to establish probable cause to believe the phone contains some evidence of a crime. To be compliant with the Fourth Amendment, the warrant must specify the particular items of evidence to be searched for and seized from the phone *and be strictly limited to the time period* and information or other data for which probable cause has been properly established through the facts and circumstances set forth under oath in the warrant's supporting affidavit.

*Burns v. United States*, 235 A. 3d 758, 773 (D.C. 2020) (emphasis added); *see also United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013) (warrant authorizing police to search for evidence of violations of "NYS Penal Law and or Federal Statutes" unconstitutional); *United States v. Rosa*, 626 F.3d 56, 62 (2d Cir. 2010) (finding warrant lacked sufficient particularity for search of electronic media where it failed to link the items to be searched and seized to suspected criminal activity). Here, the warrant unconstitutionally permitted an all-encompassing search. *See United States v. Otero*, 563 F.3d 1127, 1133 (10th Cir. 2009) (remanding on particularity grounds because "[t]hough a reasonable person might be forgiven for reading the entire warrant as subject

to limitations, we believe that the most practical reading authorizes a wide-ranging search of Ms. Otero's computer"). The warrant also included all-encompassing language rejected by other courts, permitting the search for and seizure of:  "Records and information that constitute evidence concerning persons, *including but not limited to* who (i) collaborated, conspired, or assisted (knowingly or unknowingly) the commission of the criminal activity under investigation; or (ii) communicated with members about matters relating to the criminal activity under investigation, including records that help reveal their identities or whereabouts." Exhibit 1 at 3 (emphasis added); *see United States v. Bridges*, 344 F.3d 1010, 1016-18 (9th Cir. 2003) (warrant authorizing seizure of evidence "including but not limited to" lacked particularity).

The warrant is not "carefully tailored to its justifications" and, instead, "take[s] on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The practical effect" of the warrant in this case is that it "give[s] the government carte blanche to examine the entirety of [Mr. McCombs]'s digital presence with impunity," which is a direct "affront to the Fourth Amendment as contemplated by the Founders." *In re Search of Cellular Telephones*, 2014 WL 7793690, at *6 (D. Kan. 2014).

Because the warrant was invalid, the cell phones were searched in violation of Mr. McCombs's Fourth Amendment right to be free from unlawful searches, and the evidence seized must be suppressed as the fruit of the unlawful searches. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (if the evidence has been obtained through the exploitation of a Fourth Amendment violation the evidence must be suppressed).

### Conclusion

For the foregoing reasons, and such other reasons as may be presented at a hearing on this motion, the warrant lacked probable cause and particularity and was overbroad. Because the

11

warrant was invalid, Mr. McCombs respectfully requests that the Court suppress the use as evidence of all materials seized as the result of the unconstitutional search of the three cell phones and all evidence derived from the evidence found on the cell phones.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
MARY MANNING PETRAS
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500